TUBBS *v.* HAESSIG.

1. FALSE IMPRISONMENT — PLEADING — JUSTIFICATION — ARREST
   WITHOUT WARRANT.
   In an action for false imprisonment, the facts amounting to a
   justification of the arrest must be pleaded, and this is espe-
   cially true when the arrest was without a warrant.

2. SAME—BURDEN OF PROOF.
   The burden is upon the defendant in false imprisonment to jus-
   tify the arrest in accordance with his notice of defense.[1]

3. SAME—QUESTION FOR JURY.
   Where there is evidence upon both sides of the question whether
   plaintiff in false imprisonment committed an assault in the
   presence of the defendant, an officer, justifying his arrest
   without a warrant, it is error to direct a verdict for defend-
   ant.

Error to Kent; Perkins, J. Submitted January 11,
1907. (Docket No. 34.) Decided July 13, 1907.

Case by George W. Tubbs against George H. Haessig
for false imprisonment. There was judgment for de-
fendant on a verdict directed by the court, and plaintiff
brings error. *Reversed.*

*Dunham & Malcolm,* for appellant.

*Moses Taggart* and *S. W. Barker,* for appellee.

McALVAY, C. J. This is an action of trespass for
false imprisonment. The case arose out of an arrest of
the plaintiff made by defendant, who was a police officer.
The arrest was made at the Morton House, in the city of
Grand Rapids, on December 22, 1904, and plaintiff was
taken to police headquarters and locked up, and was later

[1] As to burden of proof as to authority for arrest in action for false
imprisonment, see note to *McAleer* v. *Good* (Pa.), 10 L. R. A. (N. S.)
——.

released on bail. The officer placed a disorderly charge against him in police court, but it was not prosecuted. The next day one of the women prosecuted him for assault and battery. On an appeal to the circuit court he was acquitted.

Defendant under his plea gave notice of justification of the arrest, because of the conduct of plaintiff in the presence of defendant in causing a noise, disturbance, and gathering of the people, in violation of the disorderly ordinance of the city of Grand Rapids. The claimed disturbance arose between plaintiff and the women, sisters of his deceased wife, and aunts of his young daughter, who was with him, relative to the interference of the women in regard to the possession of the child. At the close of the testimony a motion was made by defendant's attorney that a verdict be instructed by the court for defendant on the ground that under the circumstances defendant was justified in making the arrest. The motion was granted and a verdict of no cause of action was directed, and a judgment duly entered thereon. Defendant excepted to this action of the court, and the errors assigned are upon the reasons given by the court and his conclusions of law in determining that such verdict should be entered. The reasons and conclusions of the court upon granting defendant's motion are as follows:

"Gentlemen of the jury, pursuant to the practice in this court, it is necessary for the court to state upon the record its reasons for taking a case from the consideration of the jury and directing a verdict. In this case, after careful consideration, I have come to the conclusion that, under the undisputed facts in this case, it is the duty of the court to so direct you.

"The questions involved in this case are two:

"(1) Was there a disturbance of the peace on the date in question, at the place in question? And,

"(2) Was that disturbance of the peace committed in the presence of the officer?

"It does not matter to you or to the court in this case as to what the respective rights of these parties were as to the custody of this child that seemed to have been in

controversy, nor does it matter to us at this particular time as to whether or not the ladies in question, or the plaintiff in this case, happened to be to blame for the creation of the disturbance. As I have had occasion to say to counsel, if a police officer or a peace officer must see to it that he only arrests persons not to blame for a disturbance of this kind, notwithstanding they may be participants therein, there would be no one willing to make arrests without a warrant, and the public tranquility would be disturbed by the promulgation of any such rule of law as that, as it seems to the court.

"The peace officer has a duty resting upon him to immediately arrest those who may be engaged in a public disturbance, regardless of the question as to whether the person he happens to arrest is to blame for the disturbance, providing that person is engaged in such disturbance and is a cause thereof, or contributes thereto.

"The plaintiff himself testified upon the witness stand that, from the time that he encountered these two women at his carriage until he was arrested in the Morton House entrance, there was more or less disturbance on account of the controversy between himself and his sister-in-law as to the custody of this child. He also testifies that a crowd almost immediately began to gather and followed them to the Morton House entrance, and through the entrance; that the crowd was attracted by reason of the efforts of each of the parties to gain possession of this child; that there were various expressions from the crowd of a violent nature; and that there was more or less excitement at the time of his arrest. It also appears that more or less violence was being exercised, not only by plaintiff, but by these women, to gain possession of this child. These facts are practically undisputed, and under this undisputed evidence in the case I instruct you that there was a disturbance of the peace, as that term is used in the law.

"If the plaintiff had denied any such disturbance and the witnesses on the other side had testified to a disturbance, then it would have become a question of fact for you to determine as to whether under all the facts and circumstances there was such a public disturbance as would authorize an arrest without a warrant; but, where it appears to be undisputed upon both sides that there was a disturbance, the next question that arises is as to whether that disturbance was in the presence of the offi-

cer. This is also an undisputed point in the case. He was standing at or near the corner of Monroe and Ionia streets at the time in the performance of his duty as a police officer of the city, and in full view of the parties as they came up the street and entered the Morton House door. Further than that, as he came into the crowd as it gathered in the corridor of the Morton House, whether he had passed through the first entrance or not is immaterial, there the crowd was, there the shouts were being made, and there the plaintiff was, the child, and these women, the disturbance was there in his view, in his presence, and it was his duty as a police officer and a peace officer to make the arrest of one or the other or all of the participants. They were all equally guilty of causing a public disturbance, whether it was the women or whether it was the man. If he had arrested the women, he would have been equally justified. He happened to arrest the man, and the same rule will follow as to that.

"The rule is stated here with reference to that, 'in general, all persons engaged in a breach of the peace are principals,' and these two women and the plaintiff in this case, Mr. Tubbs, must be considered as principals in this disturbance of the peace.

"Therefore, gentlemen, a breach of the peace having been committed, and it having been committed in the presence of the officer, the arrest without a warrant was justified under the law, and I so instruct you. The clerk will take your verdict of no cause of action."

Plaintiff's claim in this case was that he had driven into the city with his young daughter; that he had hitched his team near the Morton House, and visited his attorney, taking with him his daughter; that coming from his attorney's office he met Miss Reen, an aunt of the child, who attempted to caress her, and was told by him to leave the child alone; that he walked to the buggy, and lifted the child into it, and went towards the heads of his horses, intending to unhitch them and saw Mrs. Brower, a sister of Miss Reen, approach the buggy, reaching up as if to remove the child; that to get the child away from these women he stepped to the buggy, lifted her out, and started to carry her into the Morton House; that Mrs. Brower followed rapidly, catching hold of the child when going

up the hotel steps, and held onto her; that plaintiff walked in through the vestibule nearly to the elevator where he was arrested by defendant; that after he told Miss Reen to keep away he spoke to no one until he was arrested; that he struck no one, and did nothing except to attempt to get his child into the hotel and away from these women. This claim is supported by his own testimony and that of several witnesses. That he took the child to get away from them and that they followed him, when they knew that he was trying to get away, is admitted by both women. On the part of the defendant, whose defense appears in the notice given below, the testimony of the two women, the defendant, and others was offered tending to show that plaintiff struck the women. That there was a disturbance was admitted, but that plaintiff was a party actively engaged in creating such disturbance was denied, and upon this question there was a sharp disagreement between the witnesses. The record shows that there was some feeling between plaintiff and his deceased wife's sisters relative to this child.

The following is defendant's notice of justification given with his plea:

"Upon the occasion alleged in said declaration defendant's attention was called to a disturbance, commotion, and gathering of people near the Monroe street entrance of said hotel at which time defendant saw plaintiff ascend the steps of said hotel, accompanied by a lady and a small girl, at the same time and place and in the presence of defendant said plaintiff struck said lady with his hand, causing her to stagger and fall back. That defendant hastened to the scene, but did not arrive until plaintiff with said lady and girl had entered the inner door of said hotel, and that then and there plaintiff caused another disturbance, commotion, and large gathering of people by taking a firm hold of said lady, holding her and refusing to let go his hold of her. That Mr. Rathbone, a man having in charge said hotel, upon seeing the disturbance, rushed to the aid of said lady, and had about broken plaintiff's hold on said woman at the time that defendant arrived and said Mr. Rathbone then and there requested de-

fendant to place plaintiff under arrest, which defendant did, after finally separating them. That the same was done in accordance with defendant's instructions and general duties as a police officer of said city.

"This defendant then and there knew that plaintiff had violated the disorderly ordinance of said city of Grand Rapids by assaulting and striking said lady, which caused a noise, disturbance, and large gathering of people, the violation of which was a misdemeanor under the city ordinance or laws of the city of Grand Rapids, Mich., which misdemeanor, as before alleged, was committed in the presence and sight of defendant; whereupon defendant placed plaintiff under arrest and caused him to be taken to the police station of said city in the regular course of defendant's duties.

"That the following morning after said arrest defendant went to the police station of said city and conferred with the police judge of the city of Grand Rapids, assistant city attorney of the city of Grand Rapids, and the assistant prosecuting attorney for the county of Kent, and offered then and there to swear to a complaint charging plaintiff with violating the disorderly ordinance of the city of Grand Rapids, but they decided that the offense was of such a nature that a charge of assault and battery should be placed against plaintiff instead of disorderly conduct; whereupon complaint was sworn to against plaintiff for assault and battery, upon which complaint plaintiff was duly tried before the judge of police court of said city and convicted, which cause was appealed to the circuit court for the county of Kent, retried before a jury, said jury deliberating for a great many hours and finally returning a verdict of not guilty."

It was necessary to give this notice, and—

"It is manifestly of more importance to the plaintiff that he should be informed by the plea of the facts relied upon for his arrest without a warrant than when he is arrested upon a warrant, which he has the right to see and read when he is arrested." *White* v. *McQueen*, 96 Mich. 249.

The gist of this notice is "that plaintiff had violated the disorderly ordinance of said city of Grand Rapids *by assaulting and striking said lady, which caused a noise, disturbance, and large gathering of people.*"

The complaint made by the officer the next day after the arrest charged that plaintiff " did engage in a fight, quarrel, and disturbance in the presence and hearing," etc., contrary to the provisions of "an ordinance relative to disorderly persons." *No warrant was issued based upon this complaint and no prosecution was had upon it.* The officer who made the arrest and swore to the complaint testified:

"*Q.* Did you arrest Mr. Tubbs because Mr. Rathbone told you to take the man out of here?

"*A.* Because he struck that lady and had a firm hold on her when I got inside; breach of the peace; disorderly.

"*Q.* What was it he did, or to your mind was a breach of the peace?

"*A.* Striking the lady.

"*Q.* At the door?

"*A.* Yes, sir; having hold of her was enough.

"*Q.* You base your cause of arrest, because you saw him strike the blow, is that it?

"*A.* Strike the blow and having hold of her."

The issue tendered by this plea and notice was tried. The burden of proof was upon defendant to justify the arrest in accordance with his notice. Evidence was offered upon both sides. The disputed question was one of fact for the jury.

The court was in error in directing a verdict for defendant.

The judgment is reversed, and a new trial granted.

CARPENTER, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.