BAILEY v. LOOMIS.

1. APPEAL AND ERROR—EVIDENCE—TRIAL—HARMLESS ERROR.
   In an action for damages for false imprisonment, although it was error for the trial court to order defendants' counsel to deliver to plaintiff's counsel a transcript of testimony taken in a one-man grand jury investigation for the discovery of crime, said error was without prejudice, where said testimony was not used or referred to in the presence of the jury.[1]

2. FALSE IMPRISONMENT—JUDGMENT AFFIRMED BY DIVIDED COURT.
   In an action for damages for false imprisonment, the judgment of the court below in favor of plaintiff is affirmed by a divided court.[2]

Error to Hillsdale, Chester (Guy M.), J.    Submitted April 9, 1924.    (Docket No. 20.)    Decided October 6, 1924.

Case by Frank T. Bailey against Van A. Loomis and

[1]Appeal and Error, 4 C. J. § 2945; [2]Id., 4 C. J. § 3113.

others for false imprisonment. ˙ Judgment for plaintiff. Defendants bring error. Affirmed by an equally divided court.

*Andrew B. Dougherty,* Attorney General, *O. L. Smith,* Assistant Attorney General, and *Leland F. Bean,* for appellants.

*Paul W. Chase* and *B. D. Chandler,* for appellee.

MCDONALD, J.   This action is being prosecuted by the plaintiff to recover damages for an alleged false imprisonment.   The plaintiff is a farmer, 30 years of age, living in Hillsdale county, Michigan.   The defendant Thomas B. Thurlby is a deputy sheriff of Lenawee county, and the other two defendants are officers of the Michigan department of public safety. At the time the cause of action arose the defendants were investigating a case against Matie Kirby, who was charged with having murdered the newly born illegitimate child of her daughter Alice.   The plaintiff is a cousin of Charles Kirby, husband of Matie Kirby.   It is his claim that defendant Mulbar telephoned to the office of Sheriff Bates of Lenawee county and requested that the plaintiff and one W. D. Taylor, also a cousin of Charles Kirby,˳ be arrested and brought to the jail; that the sheriff was not home at the time and Mrs. Bates answered the call; that in reply to her inquiry whether he had the necessary papers he said that he had a warrant for them, that he wanted them brought in, locked up, kept apart and not allowed to communicate with anyone until he, Mr. Mulbar, Mr. Loomis and Mr. Thurlby should arrive the following day; that Mrs. Bates turned the matter over to the undersheriff, J. H. Johnson, who arrested the plaintiff and took him to the county jail at 9 o'clock in the morning where he was confined until the defendants arrived at 3 o'clock in the afternoon; that after being questioned by the defendants he was released, no

charge of felony or misdemeanor having been made against him and no warrant having been issued for his arrest.

The defendants deny responsibility for the arrest and imprisonment of the plaintiff. They say that they had received information from which they had reason to believe that the plaintiff and one W. D. Taylor were connected with the disposition of the body of the Kirby baby; that desiring to interview them, Mr. Mulbar called the sheriff's office and talked to Mrs. Bates, the sheriff's wife; that he did not tell her that he had warrants for their arrest, but said that he wanted them brought to the jail for investigation; that following the conversation with Mrs. Bates, the undersheriff, Mr. Johnson, telephoned to the sheriff's office at Adrian and was informed by Deputy Sheriff Shaw that no warrants were out for the two men, but that they merely wanted them brought in for investigation. It is the claim of the defendants that the plaintiff's arrest was the fault of the undersheriff, Johnson, but that if they were in any way responsible they had sufficient information of his connection with the Kirby child's disappearance to justify them in arresting and detaining him without a warrant. The trial resulted in a verdict and judgment for the plaintiff in the sum of $500. The defendants bring error.

Counsel for the defendants base their claim for a reversal of the judgment upon 197 assignments of error which, for convenience in discussion, they have divided into 15 subdivisions. One of these relates to the admission in evidence of similar acts on the part of the defendants towards other persons suspected of having some connection with the commission of the crime which they were investigating. Exceptions to the general rule which excludes such testimony are found in cases involving fraud, or where it is necessary to show knowledge or intent. As we will show later under the pleadings and proof in this case, none

of these elements are involved.    The only other theory upon which the admission of such testimony can be justified in this case is that the arrest was part of a pre-existing plan and in pursuance of a system adopted and followed by the defendants, to bring various people, including the plaintiff, to the jail for questioning.    If there is any evidence of such a plan and system, any evidence that the plaintiff was included in this plan, and that his arrest was a part of its consummation, the testimony as to the acts of the defendants towards the other parties would be admissible.    It fairly appears from the record that the system followed by the defendants in pursuing investigations in the Kirby case was to bring or cause to be brought any parties suspected of complicity in the crime, or of having any knowledge of it, to the jail for questioning.

Defendant Van A. Loomis testified:

"But they certainly ought to have been brought in for questioning to find out what knowledge they might have had of the felony and for investigation.    They should have been brought into the sheriff's office where, as is customary, I very often have men brought to the sheriff's office to interrogate them.    Sometimes I call them up and have them come in, sometimes I go out and have them come in, sometimes I send somebody out for them.    I believe it is so with most officers. That doesn't mean always, but then it is the custom. That is my custom, the same as Mulbar's."

Defendant Mulbar testified:

"It was discussed in the general conversation between Shaw, Loomis, Thurlby and myself, that Mr. Taylor, Bailey, Charles Kirby, Dr. Kirby and Alice Kirby ought to be interviewed again."

This testimony shows that the defendants' plan or design was to interview the five parties mentioned by Mr. Mulbar, including the plaintiff, and that their system was to bring them or cause them to be brought

to the jail for that purpose.    In a sense the interview of the plaintiff and the other parties was one transaction.    There was a close logical connection between the issuable act and the similar acts towards the other parties.    Charles Kirby and Dr. Kirby were arrested and taken to the jail where they were interviewed and released.    Alice Kirby was not arrested, but voluntarily went to the jail for her interview.    On the same evening that Charles Kirby was released from jail, defendant Mulbar called the sheriff to have Bailey and Taylor brought in.    Taylor was not found. Bailey was arrested.    We think that, under the circumstances, testimony of similar acts towards the other parties mentioned was admissible.    The trial court permitted the testimony to be considered by the jury as characterizing the act charged in this case and not as tending to prove that it had been committed.    Without further explanation it is quite probable that the jury did not understand in what way the testimony could characterize the act in question.    The court would have been right if the similar acts were offered to show knowledge or intent. Where those elements are material, similar acts are admitted to show not the doing of the act charged, but the intent with which it was done or the knowledge that the party had when he did it.    Under those circumstances, the testimony is admitted on the assumption that the issuable act has been proven and the purpose is to characterize it.    On the other hand, where, as in this case, intention, knowledge, good faith or malice are not involved, such testimony is receivable for an entirely different purpose.    It is admissible not because the acts are similar but because all of the acts were together a part of a prior general plan, design or system, which included the doing of the act in question; and it therefore may properly be considered by the jury for what bearing it may have on the probability that defendants actually did the act

charged. A discussion of proof of this character will be found in Professor Wigmore's work on Evidence, vol. 1, § 304, p. 396. While the court did not err in receiving evidence of similar acts, we think he should not have allowed plaintiff's counsel to bring out in connection therewith irrelevant details that could have no other purpose than to prejudice the jury against the defendants.

On cross-examination the defendant Mulbar was asked the following questions, all of which were answered in the negative:

"*Q.* Did you and Mr. Loomis have Mr. Kirby (Charles) in what you termed the sheriff's private office the whole of the night, and there didn't you ask him questions, and when he refused to answer, didn't you or Mr. Loomis in your presence, beat him?

"*Q.* And didn't Mr. Loomis in your presence tell him that in Detroit, when men wouldn't talk, they killed them?

"*Q.* And that the time had arrived to kill him?

"*Q.* Now, didn't you in that talk with Mr. Kirby tell him that you were going to put the whole damn Kirby family in jail?

"*Q.* And didn't you ask him this. 'How would you like to see your old mother walking in that door?'

"*Q.* And didn't you say to him. 'Unless you talk you will see her walking in here in just a few minutes?'"

This cross-examination was permitted for the purpose, as counsel stated, of showing concerted action on the part of the defendants, of showing bad faith and of characterizing their action in the instant case.

Also on the cross-examination of defendant Thurlby, over objection, he was compelled to testify that Charles Kirby had told him he had been abused by defendants Mulbar and Loomis while they were questioning him in the Adrian jail, that he had been handled roughly and had his pipe knocked out of his mouth. There was no claim that the defendants or any of them had

abused plaintiff Bailey during their interview with him.    In fact, he testified that they had treated him as a gentleman and that he shook hands with Mulbar when the interview was over.    All of the material facts relative to the arrest and detention of Charles Kirby were admitted by the defendants; so that there was no occasion to inquire into these irrelevant matters to test the accuracy or credibility of the witnesses.    We recognize the rule that the scope and extent of cross-examination is a matter for the discretion of the trial judge, but in this instance it was carried to such an extent that it became prejudicial and resulted in eliciting irrelevant facts, which the jury was allowed to consider as characterizing the act charged, and as showing that the defendants did not act in good faith.

In *Gould* v. *Gregory*, 126 Mich. 594, it was said, quoting syllabus:

"Though the cross-examination of a witness will ordinarily be left to the discretion of the trial judge, where improper cross-examination is allowed to such an extent as to be clearly prejudicial, it is ground for reversal, even in a civil case."

While in the instant case we think the circuit judge in the exercise of his discretion should not have permitted the cross-examination complained of, we do not base our finding of error on that.    It is rather from a combination of circumstances arising from an improper cross-examination on irrelevant matters.    The prejudicial character of the questions asked of defendant Mulbar, the answers of defendant Loomis, which permitted the plaintiff to get before the jury hearsay testimony by way of statements of Charles Kirby, and the fact that they were allowed to consider such testimony as characterizing the act of the defendants in relation to plaintiff Bailey, together created a situation which must have been highly

prejudicial to the defendants. For this error the judgment should be reversed.

Complaint is made that in his instructions to the jury the court wrongfully placed the burden of justifying the arrest upon the defendants. This was not error. The burden was upon defendants to justify the arrest in accordance with the notice in their plea. *Tubbs* v. *Haessig*, 149 Mich. 185. We think that some misunderstanding of the charge is due to an apparent uncertainty of the court as to whether the question of probable cause was involved. In some portions the court evidently proceeded on the theory that the arrest could not be justified on the ground of probable cause and yet he submitted that question to the jury. If the defendants caused the arrest and detention of the plaintiff, the evidence is undisputed that they did so for the sole purpose of interviewing him in regard to his connection with the crime or his knowledge of it. In reference to his directions to the sheriff's wife to have Bailey and Taylor at the jail, defendant Mulbar testified:

"If I remember correctly, I told her all I wanted them for was for questioning regarding the Kirby case. * * * I told her to bring Bailey, that we wanted to question him at the sheriff's office. * * * I did not want them arrested, not necessarily, no. * * * I never thought of it one way or the other as to Mr. Bailey's running away; but my point was that I wanted to see Mr. Bailey. * * *

"Q. Now, if you believed that he was guilty of a felony, why did you hesitate for a minute about going and arresting him and locking him up?

"A. Why, I wanted to talk with the man first and see for my own self. I wanted further information. * * * I had no intentions of having him thrown in jail; I came here to talk with him."

Defendant Loomis testified:

"I simply wanted to interview him (Bailey), to find out if he had any connection with the disappearance

of this child.    I wanted to be careful and be cautious, not to do anything rashly, but if he was connected then I should not hesitate to arrest him.   *   *   *   I thought it would be more careful and cautious and prudent to talk with Mr. Bailey before I took out a warrant and had him thrown into jail to answer a crime of being implicated in this murder case, and so far as I was concerned that was the only reason that I did not order his arrest at that time."

There is no evidence that the question of probable cause entered into the matter at all, except as a reason for the interview.    Whether they directed his arrest or just asked the sheriff to invite him in, the purpose was the same, viz., to interview him as to his knowledge of the crime or his connection with it.    There was no intention to have him brought before a magistrate or to prosecute him.    In fact the purpose of the interview was to determine if there was probable cause for public prosecution.

"An arrest cannot be made for one purpose and justified for another.    It makes no difference whether defendants did or did not suppose the plaintiff had violated the laws of this State, unless they proposed to prosecute him here.    Not only is no testimony given of any such purpose, but the contrary is fairly to be inferred from the testimony of all parties."    *Malcolmson* v. *Scott*, 56 Mich. 459.

In view of the undisputed evidence and the law applicable thereto, the court did not err in minimizing the importance of the claim of probable cause.    In submitting the question at all he gave the defendants a defense to which, under the evidence, they were not entitled.

Objection is made as to the instruction that if the arrest was made for the purpose of interviewing the plaintiff, it was unlawful.    The court might properly have instructed the jury as a matter of law that if defendants caused the arrest of the plaintiff they did so for the sole purpose of interviewing him and not

for the purpose of public prosecution, and that under the admitted facts the arrest was unlawful. This is not a case such as police officers of large cities are sometimes called upon to investigate, where there is an urgent and immediate necessity for bringing in parties suspected of a felony.

There is some merit in the objection that the court failed to correctly charge the jury on the question of the adoption or ratification of the arrest. He should have instructed them as requested, that to constitute ratification the act complained of must have been in the interests of the defendants or in furtherance of their purpose. *Smith* v. *Lozo,* 42 Mich. 6.

We also think the court should have charged the jury as requested, that the fact that no suit had been begun against Undersheriff Johnson could be considered by them as a circumstance which might or might not affect his credibility.

The complaint that the court erred in charging the jury that the good faith of the defendants should not be considered in estimating the damages is without merit. Neither by the pleadings nor in his proof did the plaintiff claim anything more than actual damages. Evidence of good faith and the absence of malice cannot be considered in a false imprisonment case unless exemplary damages are claimed. The court was right in this instruction.

During the trial of the case, on motion of plaintiff's counsel, the court made an order requiring counsel for the defendants to deliver to them a transcript of the testimony taken in a so-called one man grand jury investigation called for the discovery of crime in connection with the disappearance of the Kirby baby. We think the court was wrong in making such an order, but as no part of the testimony was afterwards used or referred to in the presence of the jury, the defendants were in no way prejudiced. As to the use which may be made of such testimony, see *People* v.

*Prevost,* 219 Mich. 233, and *People* v. *Butler,* 221 Mich. 626.

We have considered all of the numerous assignments, but find no error except as above stated.

The judgment should be reversed and a new trial granted. The defendants should have costs.

CLARK, C. J., and SHARPE and MOORE, JJ., concurred with McDONALD, J.

WIEST, J. I am for affirmance. I cannot hold that the errors complained of have resulted in a miscarriage of justice. I think the judgment just. I agree with Mr. Justice McDONALD that the court was in error in ordering the testimony taken before the magistrate to be open to the view of counsel for plaintiff, but inasmuch as this was not in the presence of the jury and no use thereof made before the jury the error was without prejudice. Such testimony could not be used for any purpose by either side in this action.

The judgment is affirmed, with costs to plaintiff.

BIRD, STEERE, and FELLOWS, JJ., concurred with WIEST, J.