## CARR v. NATIONAL DISCOUNT CORPORATION.

### No. 10696.

United States Court of Appeals
Sixth Circuit.

Jan. 31, 1949.

Rehearing Denied March 14, 1949.

---

[1] Graham v. United States, 9 Cir., 99 F.2d 746.

Hugh Davidson, of Detroit, Mich. (Davidson & .Theut, of Detroit, Mich., on the brief), for appellant.

Louis Rosenzweig, of Detroit, Mich. (Louis Rosenzweig, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, MARTIN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The action was by the appellant who sought damages from the appellee for an arrest and detention without probable cause. Trial was to a jury and at the conclusion of appellant's evidence the district court, perceiving no proofs that the appellant had been arrested and detained upon complaint of the appellee, directed a verdict of no cause of action. The appellant, relying upon circumstances which he conceives justifies an inference that the appellee had instigated the arrest and detention and so raised an issue of fact for submission to the jury, brings the appeal. The circumstances which he relies upon are therefore required to be set forth.

The appellant is a used car dealer in the City of Hamtramck, a suburb of Detroit, and the appellee is a corporation which finances such dealers by means of what is known as a "floor plan mortgage" on the dealer's stock in trade. The mortgage here involved, which was duly recorded, permitted the motor vehicles described therein, to remain in the dealer's possession for resale, provided that the mortgagor could sell them without the mortgagee's written consent subject to the condition that prior to sale the mortgagor would make payment according to a schedule which listed the amount loaned on each specified motor vehicle, and that if default should be made, the note executed contemporaneously with the mortgage should become at once due and payable, and the mortgagee or its agents entitled to take possession of the mortgaged property. Certificates of title to the mortgaged automobiles were deposited with the Discount Corporation as additional securi-

ty, though not assigned. During the existence of this arrangement, however, the appellant was permitted to sell the encumbered vehicles to purchasers without first obtaining a written or oral release, the practice followed being for the appellant to pay to the appellee's representatives, on the day following the sale of a car, the required portion of the mortgage, whereupon the certificate of title for the car sold on the previous day would be delivered to the dealer and the lien thereon discharged.

On the 18th of September, 1946, a Buick car was sold by a representative of the appellant to one Chester Oberzanek, for cash, but the salesman absconded with the money. At about the same time the appellant sold a DeSoto to one Al Gardas, also for cash. The appellant did not learn of the Buick sale until the 25th of September, and the appellee was not informed of either sale until about the 3rd of October. On the 8th of October, at which time neither car had been released from the mortgage by payments to the appellee, the latter repossessed itself of all the cars on the plaintiff's lot, of the Buick car which had been sold to Oberzanek and attempted to repossess itself of the DeSoto car sold to Gardas, but was unable to do so because Gardas, learning of its intentions, had hidden the vehicle. On October 18th the appellant was arrested without a warrant by the Hamtramck Police Department, but was released a few days later. He was re-arrested at 2:30 A. M. on October 21st, but after a conference later in the day at the office of the Wayne County Prosecuting Attorney, where it was ascertained that the appellant's wife had paid $2210 to the Hamtramck police to cover the lien upon the Oberzanek and Gardas cars, the appellant was released.

There is no evidence that appellee had fild a complaint with the Hamtramck Police Department. The appellant therefore relies upon allegations that the defendant had threatened to repossess the cars sold to Oberzanek and Gardas; that it had no right to make such threats because by a course of conduct in accordance with the custom and usage of the trade, and by express permission to the dealer to sell encumbered cars, it had waived its lien against such vehicles; that it had concealed such waiver from the purchasers and had thereby fraudulently engendered hostility on their part toward the appellant; that the Police Department had become its tool to arrest and incarcerate the appellant; that the agents of the appellee had, in effect, directed the first arrest and imprisonment, had likewise directed the second arrest and detention and, through its agents, had, by means of such arrests, compelled the appellant's wife to make the payment in order to secure the appellant's release by the police. These allegations are in toto denied by the appellee.

In support of his averments, Carr testified that without disclosure to him of the nature of the complaint, and after spending the night in jail, he was taken to the detective's office where Brennan, the defendant's agent, and Gardas and Oberzanek were present; that there Detective Reppke asked Brennan on what charges he wanted Carr held, and that Brennan replied that as long as he received the money to pay off the mortgage he was to be released and no charges were to be preferred against him; that the police told him that the reason he was locked up was connected with the mortgage on two cars. He further testified that after being released the second time, another agent of the appellee had asserted that he knew how to get the money; that all he had to do was to repossess the car from the purchaser; that the purchaser would get back at the dealer; that if he obtained no satisfaction he would go to the Police Department. There is also evidence that one of the appellee's agents said to Gardas that if he received the car from Gardas he would order the release of Carr; that when Gardas said "What do I do then?" the agent replied "You go after Tony" (meaning Carr). The appellant contends that by this evidence he has shown that the appellee, through its agents, caused or directed the arrests of the appellant, and that this constituted a prima facie case, throwing the justification for the arrest upon the defendant. Stensrud v. Delamater, 56 Mich. 144, 22 N.W. 272; Barker v. Anderson, 81 Mich. 508, 45 N.W. 1108; Bailey v. Loomis, 228 Mich. 338, 200 N.W. 148.

902

It is, however, also the law of Michigan that one who merely gives information regarding an offense does not incur liability, even though the party giving the information acted maliciously or without probable cause. Poupard v. Dumas, 105 Mich. 326, 63 N.W. 301; Shinglemeyer v. Wright, 124 Mich. 230, 82 N.W. 887, 50 L.R.A. 129. This seems to accord with the general rule. Burlington Transportation Co. v. Josephson, 8 Cir., 153 F.2d 372, and Richardson v. Empire Trust Co., 230 Mo. App. 580, 94 S.W.2d 966. With these general rules in mind we have made a careful examination of the record.

We find no evidence that the appellee had lodged a criminal complaint against the appellant. It had not suggested to Oberzanek to make such complaint. If the observation made to Gardas, to-wit: "You go after Tony," may be construed as instigating the arrest, it failed to have that result because Gardas lodged no formal complaint with the police. The report of the Hamtramck Police Department, not introduced in evidence but printed by the appellant in the record, shows a complaint made after the arrest by Oberzanek for an offense designated as larceny by conversion, but no formal complaint by Gardas.

Long ago the Supreme Court of the United States, speaking through Mr. Chief Justice Taft, in Director General of Railroads v. Kastenbaum, 263 U.S. 25, 27, 44 S.Ct. 52, 53, 68 L.Ed. 146, defined the action of false imprisonment as "in the nature of a trespass for a wrong or illegal act in which the defendant must have personally participated directly or by indirect procurement. The gist of it is an unlawful detention, and, that being shown, the burden is on the defendant to establish probable cause for the arrest. * * * Probable cause is a mixed question of law and fact." There being no proof that the appellee had directly participated in the arrest, we consider whether it was brought about by indirect procurement. It is urged that the appellee, by reclaiming the Oberzanek car and threatening to reclaim the Gardas car, notwithstanding waiver of its lien on both, expected the purchasers to complain to the police, expected that the appellant would be arrested, and the intend-

ed result taking place, it was brought about by the procurement or at the instigation of the appellee.

With the question of waiver we have no immediate concern. It is true that the contract provided for payment of mortgage indebtedness prior to the transfer of possession to purchasers and that delivery was permitted without such prior payment, but as the contract was practically construed delivery of possession was conditioned upon settlement the day following sale. It would seem that a waiver may ordinarily have no greater scope than the facts which are advanced to support it, and that a single day of grace will not support consent to delay of weeks. But this we have no occasion to decide because whether repossession was valid or invalid is a question between purchasers and the Finance Company, and involves questions of title as between purchasers in good faith and mortgagees who permit the dealer to retain possession. Daas v. Contract Purchase Corp., 318 Mich. 348, 28 N.W.2d 226, instructive as it is upon Michigan adjudications, does not control the present issue because certificates of title were there left with the dealer who was thereby empowered to assign them to purchasers, and so to more easily defraud purchasers, bringing into play the equitable maxim that as between a mortgagee who suffers a loss because of the dishonesty of a dealer and a purchaser who is asked to suffer the same loss, he who placed it in the power of the dealer to work the fraud must be held to be responsible for it. The Daas case involves a problem in title and not a false arrest.

Simple solution of the present problem is clearly to be perceived, notwithstanding the complex theories submitted by the briefs in respect to Michigan law dealing with floor plan mortgages, if we keep in mind that we are concerned not with title but with a charge of false arrest. One may not be held liable for such arrest unless it was brought about without probable cause by his direct participation or by his indirect procurement. Section 9.1474 of Chapter 73 of the Michigan Statutes Annotated. Comp.Laws 1929, § 4660, as amended by Act No. 272, P.A.1945, provides that in the event of the sale or other transfer of a mo-

tor vehicle for which a certificate of title has been issued, the holder of such certificate shall endorse on the back of it a sworn assignment showing satisfaction of mortgage or lien, and deliver the same to the purchaser, and § 9.1475, Comp.Laws 1929, § 4661, provides a penalty of fine, imprisonment, or both, to be imposed upon any person who sells a motor vehicle without complying with such requirements. The essence of a claim for false imprisonment is that the imprisonment must be false,—that is, without probable cause. Oberzanek and Gardas were sold cars without the delivery to them of a certificate of title, and without disclosure of mortgage. Oberzanek made a written complaint to the Hamtramck police. Assuming, without deciding, that the appellee, through its agents, repossessed the cars with the expectation that a criminal complaint would be lodged by the purchasers against the appellant, the essential question is,—was that complaint without probable cause,—and the short and simple answer must necessarily be that it was not. Both Oberzanek and Gardas, upon the undisputed evidence in this case, had given up their money for cars without receiving title and without information as to possible liens. They had ample cause to complain; they committed no tort in doing so; the arrest and detention of Carr upon their complaint was not false, even if instigated by the appellee. Just as one may not be guilty as an accessory to a crime which has not been committed, just so must it follow that one may not be held liable as an instigator of a false arrest when, by undisputed evidence, the arrest was made at the instance of those who had cause to complain that they had been injured by violation of law.

### On Petition for Rehearing
Affirmed.

A petition for rehearing calls attention to certain inadvertences contained in the factual recital of the opinion which we are compelled to correct. The report of the Hamtramck Police Department, upon the appellant's arrest, we find was introduced into evidence. There was no written complaint made by Oberzanek, and neither Oberzanek nor Gardas was present when Brennan, the appellee's agent, made the observations to the police noted in the opinion. We are of the view, however, that these errors do not affect the reasoning of the opinion.

 The police report is an official report and must be given credence unless successfully impeached, and we think it was not. The contention that probable cause is an affirmative defense which must be pleaded before it can be proved, while undoubtedly a correct statement of the law, is not applicable to cases where the plaintiff's proofs clearly show the lawfulness of the arrest. As we said recently in Huszar v. Cincinnati Chemical Works, 6 Cir., 172 F.2d 6, 9, decided February 3, 1949, "Affirmative defenses are required to be pleaded to prevent surprise", and as the late Judge Knappen held in Alexander v. Thompson, 6 Cir., 195 F. 31, 33, a Michigan case, "It is not necessary that proof to this effect be introduced by defendants. It is sufficient if the fact is shown by plaintiff's evidence". The contention that mere arrest establishes a prima facie case of false imprisonment is too broad, notwithstanding some generalizations to that effect in some of the Michigan cases. The plaintiff must also show that the arrest was unlawful. Barker v. Anderson, 81 Mich. 508, 511, 45 N.W. 1108; Lynn v. Weaver, 251 Mich. 265, 267, 231 N.W. 579. Nor are we persuaded that proof of probable cause is material only in mitigation of punitive damages. Were we to accept the appellant's argument, the necessary result would be that for every arrest, however made, there would be liability. Such, we think, cannot be the law either in Michigan or anywhere else.

Subject to the corrections hereinbefore made in the opinion, the petition for rehearing is denied.