proposed rates. The parameters of such a hearing have not yet been delineated with any particularity.

Although as stated above, the traditional adversary "trial-type" proceedings do not appear to be mandated by the Constitution, I believe that in matters as important as the establishment of utility rates for large groups of citizens and businesses, a greater degree of precision and equity can be achieved when those opposing the proposed rates have an adequate opportunity to review the proposal with its supporting data, and an occasion to test the proposed rate and its underlying bases through the medium of cross-examining those responsible for its promulgation. Perhaps in the context of utility rate-making these would be central ingredients of a truly "meaningful" hearing.[3]

The proper resolution of this case, however, does not require that we reach the more difficult question, i. e., were the proceedings in this case so deficient so as not to comport with the concept of "meaningful hearing." As the majority opinion points out, counsel for the Hotel Association did not object to the amount of time alloted for study of the proposal at the time of its dissemination. In addition, counsel did not establish, certainly on the record, the various inquiries or lines of inquiry the Hotel Association would have propounded had they been given the opportunity to cross-examine the proponents of the rate, nor did counsel avail himself of what opportunity for questioning was afforded him.

For these reasons, I concur in the result reached in this case.

Betsy A. JENNINGS et al., Appellants,

v.

Ilus W. DAVIS et al., Appellees.

No. 72-1590.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1973.

Decided April 20, 1973.

3. An impartial presiding officer at any proceeding would also appear to be an important element in insuring a "meaningful" hearing. In the present case the proceedings were chaired by the Vice-Chairman of the Water & Power Authority with the aid of an Assistant Attorney-General of the Virgin Islands. Although in view of the disposition of this case, this factor does not render these hearings other than a "meaningful hearing," my concern with an arrangement that places the control of the proceeding in the hands of the proponent of the rate increase, and the proponent's counsel, must be noted.

Philip C. Ehli, and Ben E. Pener, Kansas City, Mo., filed appendix and appellants' brief.

Manfred Maier, Kansas City, Mo., filed brief of appellees, Lewis, Carr and Divilbliss.

Harry P. Thomson, Jr., and George E. Leonard, Kansas City, Mo., filed brief and supplemental appendix of appellees, Davis, Kelly, Gilmore, Wells and Willits.

Before MATTHES, Chief Judge, and ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal from a dismissal of appellants' civil rights action under 42 U.S.C. § 1983 for failure to state a claim upon which relief can be granted.

The complaint alleges that on November 20, 1969, appellant, Mrs. Jennings, was arrested on a speeding violation by a Kansas City, Missouri, police officer and was directed to report to the 63d street police station; that at the station appellant overheard two police officers "talking, bragging and ridiculing the behavior of traffic violators that they had arrested", which remarks caused appellant to feel "humiliated, frightened and intimidated;" that appellant inquired of these officers why they "were not out arresting murderers and thiefs who were out committing all these crimes right under their noses;" and that Noffke, a civilian clerk at the station, thereupon committed an assault and battery upon appellant and engaged in an unlawful search and seizure of her person, all in violation of her constitutional rights. Appellant alleged that she suffered physical and emotional injuries requiring hospitalization, seeking actual and punitive damages. She and her husband joined common law tort violations in separate counts with this § 1983 action.

Appellants subsequently were allowed to dismiss the suit without prejudice with respect to Noffke, whom they believed to be "judgment proof" and to have been discharged by the Board of Police Commissioners. This appeal is from a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of the § 1983 claim against the remaining defendants, who are: The five members of the Board of Police Commissioners of the Kansas City Police Department; Clarence M. Kelley, the Chief of Police; Carr, the desk sergeant and Lewis, a patrolman at the 63d street station; and Divilbiss, the arresting officer.

All defendants, save Noffke, moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Each attached an affidavit to his motion. The Chief of Police and the Board of Police Commissioners members each stated, under oath, that he had no personal knowledge of the incident, was not present at the time and did not direct or order the arrest or subsequent action relating to appellant. Lewis stated that although he was present at the time of the incident, he was in no way involved in any act directed toward appellant and had no supervisory authority. Carr stated that he was present but did not direct, order or become involved in the incident and was unable to intervene. Divilbiss admitted giving appellant a speeding summons but stated he was not present and had no knowledge of the incident.

The trial court, D.C., 339 F.Supp. 919, dismissed the complaint against the Chief of Police and the Board members holding that, as a matter of law, where damages are sought under § 1983 "the doctrine of respondeat superior is not available to impose vicarious liability upon a defendant who has no personal involvement in the alleged deprivation of plaintiff's federally-protected rights." In a separate ruling the trial court dismissed the cause against Divilbiss, Lewis and Carr, holding that under the facts alleged in the complaint, no constitutionally protected right had been violated by the three.

██ Although the action was dismissed under Rule 12(b)(6), matter outside the pleadings was presented by way of affidavits and exhibits which were

not excluded by the trial court. Under Rule 12(b), the dismissal constitutes disposition by summary judgment as provided in Rule 56 on the basis that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[1] Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Minnesota Bearing Company v. White Motor Corporation, 470 F.2d 1323 (CA8 1973) and Abramson v. Mitchell, 459 F.2d 955 (CA8 1972).

■ 42 U.S.C. § 1983, of course, must "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).

### THE ARRESTING OFFICER

■ We affirm the trial court's dismissal of the complaint with respect to patrolman Divilbiss. The only allegation in the complaint in regard to this appellee was that Divilbiss arrested appellant for speeding on the day of the incident and told her to report to the 63d street station. The appeal with respect to this defendant is patently frivolous.

### THE POLICE CHIEF and BOARD MEMBERS

■ We agree with the trial court's holding that this action is not maintainable against the appellees under the doctrine of respondeat superior, nor do we find the complaint sufficient on any other basis of liability.

The appellants admittedly placed heavy reliance upon the respondeat superior theory in pursuing this action. We, of course, are to afford remedial statutes such as § 1983 a liberal construction, but expressly reject the application of the doctrine on this set of facts, as have the vast majority of federal courts in cases such as this. *See, e. g.,* Adams v. Pate, 445 F.2d 105 (CA7 1971); Madison v. Gerstein, 440 F.2d 338 (CA5 1971); Dunham v. Crosby, 435 F.2d 1177 (CA1 1970); Campbell v. Anderson, 335 F.Supp. 483 (D.Del.1971); Sanberg v. Daley, 306 F.Supp. 277 (N.D. Ill.1969) and Jordan v. Kelly, 223 F. Supp. 731 (W.D.Mo.1963). But, *compare,* Carter v. Carlson, 144 U.S.App. D.C. 388, 447 F.2d 358 (1971), rev'd on other grounds, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) and Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970).

The respondeat superior principle holds liable the "innocent" master (with the infamous "deep pocket") for the torts committed by his servant in the course of his employment. The modern justification for respondeat superior is that it is

. . . a rule of policy, *a deliberate allocation of a risk.* The losses caused by the torts of employees, which is a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of all past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large. Added to this is the makeweight argument that an employer who is held strictly liable is under the greatest in-

---

1. Rule 12(b) reads in pertinent part:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

centive to be careful in the selection, instruction and supervision of his servants, and to take every precaution to see that the enterprise is conducted safely. (emphasis added) W. Prosser, Law of Torts, 458–459 (4th ed. 1971). With such justification in mind the "master" of course, is and can only be the municipality employing the appellees. It is the city who set the enterprise in motion, who "profits" from the appellees' labor and who, if held liable in such instances, can by its powers of taxation spread the resulting expenditures amongst the community at large.[2] Kansas City, however, is not a defendant in this action, nor could it be under § 1983. Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

We also believe that appellants' claim cannot succeed on the theory of negligence.

■ The two requisites for a § 1983 cause of action are: (1) an allegation that the conduct complained of subjected the complainant to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, and (2) an allegation that the conduct complained of was done or caused to have been done by a person acting under the color of law. Basista v. Weir, 340 F.2d 74, 79 (CA3 1965).

■ Generally, liability for negligence arises only from affirmative action. Where, however, one has an affirmative duty to act and he fails to act accordingly, he may be held liable for his nonfeasance if his omission is unreasonable under the circumstances. Huey v. Barloga, 277 F.Supp. 864, 872 (N.D. Ill.1967). Appellants have not alleged any affirmative conduct so their claim against the appellees obviously is grounded upon nonfeasance. But no Board member or the Chief is alleged to have been present at this incident or to have had the duty, opportunity, or the ability to intervene in order to prevent Noffke's alleged unreasonable search and seizure of Mrs. Jennings. And to extend the general duty of these appellees to prudently select, educate and supervise police department employees to an isolated, spontaneous incident such as this would be beyond reason.

## CARR and LEWIS

Carr was the Desk Sergeant and Lewis a patrolman who the complaint alleged were both present at the 63d street station when Noffke seized and searched Mrs. Jennings. Nothing further is alleged in the complaint with respect to these police officers. While the complaint against these appellees might be sufficient to withstand a motion to dismiss under a negligence theory,[3] as previously indicated we here treat the motion as one for summary judgment. Carr in his affidavit stated that he was neither involved in the incident nor was he "able to intervene between plaintiff and defendant Noffke at the time of the alleged occurrence."[4] The trial court thereupon issued an order for the appellants to show cause why the action should not be dismissed "In view of the absence of any factual allegations tending to implicate defendants . . . in a deprivation of the federally-protected rights of Betsy Jennings."

■ In such instance, appellants could not then rest upon the mere allegations of their pleadings, but should have "set forth specific facts showing that there is a genuine issue for trial." See

---

2. It has not been shown that under the circumstances of this case, the doctrine could be applied in Missouri state courts. See 42 U.S.C. § 1988.

3. Both were bystanders at the incident and one or both may have had a duty to intervene (assuming the opportunity existed) in order to prevent the alleged deprivation of Mrs. Jennings' constitutional right to be free from unreasonable searches and seizures. See, Byrd v. Brishke, 466 F.2d 6 (CA7 1972). See also, Via v. Cliff, 470 F.2d 271, 275–276 (CA3 1972).

4. Lewis in his affidavit admitted that he was present at the station but stated he "was in no way involved in any act directed toward plaintiff nor had he any supervisory authority."

Rule 56(e).[5] Since appellants did not so respond, summary judgment could appropriately be entered against them.

We further find that the trial court did not abuse its discretion in dismissing the pendant state claims against the appellees. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Affirmed.

5. Rule 56(e) provides in pertinent part: [A]n adverse party may not rest upon the mere allegations of denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.