Margaret S. **RODRIGUEZ,**
Plaintiff-Appellant,

v.

Donald E. **RITCHEY et al.,**
Defendants-Appellees.

No. 75–1362.

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1976.

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

Robert W. Knight, Tampa, Fla., for plaintiff-appellant.

Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for defendants-appellees.

Before COLEMAN, RONEY and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge.

In this case we review a summary judgment entered in favor of defendants, six FBI agents sued for allegedly arresting the plaintiff-appellant in violation of the Fourth Amendment. On summary judgment, our first concern is whether there was any genuine issue of material fact, Rule 56(c), Federal Rules of Civil Procedure. Liability turns on the reasonable good faith of the officers for acts occurring during the investigation and arrest of the appellant.

We affirm the judgment of the District Court as to all appellees except Agent Arwine. We are of the opinion that reasonable men might well differ as to whether he acted in reasonable good faith and that as to him this issue should have gone to trial.

## I. Facts

Viewed in the light most favorable to the appellant, *Tabacalera Severiano Jorge v. Standard Cigar Company*, 5 Cir. 1968, 392 F.2d 706, *cert. denied*, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260 (1968), the facts are as follows.

During 1971 and 1972, an extensive federal investigation of alleged gambling activities was being conducted in central Florida. The primary target was one Henry Trafficante, but the investigation culminated in the indictment of fifty seven defendants, Trafficante included. Also named as a defendant was the appellant, Margaret S. Rodriguez, who turned out to be altogether innocent.

As part of the investigation, on September 30, 1971, Judge Joseph P. Lieb authorized the interception of telephone calls made to and from Tampa telephone number 238-2354. This wiretap was authorized pursuant to Title III of the Omnibus Crime Con-

trol and Safe Streets Act, 18 U.S.C. §§ 2510–2520. The telephone, located in a residence at 801 E. Jean Street, Tampa, was being used by suspect Frank Fraterrigo Vega. Judge Lieb also authorized the use of a pen register, a device to record telephone numbers called from the Vega phone. The wiretap began on October 1, 1971.

On October 5, 1971, at 9:47 a. m., Vega called 935–0024 but the pen register recorded "9" for "0" in the fourth digit, thus listing the number as 935–9024, an error, or malfunction, not discovered until much later. Vega spoke to a female called "Margo", about gambling activities. On the basis of this conversation, it appeared that Margo was a bookmaker, and at various points in the conversation reference was made to an individual named "Gene". Appellee John J. Batley, a special agent of the FBI, monitored and recorded the call.

"Margo" was a stranger to the investigators, and Special Agent Joseph A. Arwine was assigned to determine her identity. He was given a handwritten log, prepared by Batley, which showed the call had occurred at 9:47 a. m. on October 5, between Vega at 238–2354 and Arwine's subject at 935–9024. Arwine also received a ten page transcript of the conversation. The precise assignment given Arwine was: (1) to determine the identity of the unknown female suspect; (2) to determine her record with the Tampa police, the Hillsborough County sheriff, and the Greater Tampa Credit Bureau; and (3) to determine the suspect's make of car and her license number. Because of the ongoing investigation, Arwine was directed not to interview the subject.

Arwine's initial step was to peruse the 1971 edition of the Hill-Donnelly Criss Cross Telephone Directory for Tampa and the equivalent of the Tampa, Florida City Directory. He could not find telephone number 935–9024 in either volume, and correctly deduced that the number was unlisted. Consequently, Arwine contacted the General Telephone Company in Tampa and asked an employee of the Security Division to ascertain the subscriber to 935–9024. According to Arwine's affidavit, the security

employee identified the subscriber to the unlisted number as the appellant, Margaret S. Rodriguez, 3420 Grace Street, Tampa. This was a gross error, apparently on the part of the telephone company employee. Telephone number 935–9024 was actually a pay telephone, unlisted because all pay telephones are unlisted. On the other hand, the appellant's telephone, 876–5646, is not unlisted; it is listed in the name of her home-conducted business, Margo's Beauty Salon. Furthermore, the number 876–5646 bears no resemblance to the number 935–9024.

Obviously, Arwine could not have more completely been led astray. He was given the wrong number to begin with and then received wholly inaccurate information by the telephone company.

The "information" which Arwine received from the telephone company was preserved in handwritten notes dated October 28, 1971. Arwine does not remember the name of the employee who supplied the information, and he did not obtain a copy of the company records for 935–9024. Arwine simply informed Special Agent James S. Kinne of his "discoveries".

Next, Arwine contacted the Tampa police, the Hillsborough sheriff, and the Tampa Credit Bureau. He learned that appellant did, in fact, live at 3420 Grace Street and had operated Margo's Beauty Salon for about sixteen years. Moreover, she had never been arrested by the local authorities.

On December 5, 1971, Arwine conferred with Detective Sergeant John Fairbanks of the Tampa police vice squad. Arwine asked whether Fairbanks had ever encountered a Margaret or Margo Rodriguez in his gambling investigations for the Tampa police, but he did not provide Fairbanks with the suspect's address, age, or physical description. Indeed, the conference took place in Ybor City, away from Fairbanks' office where he could have had access to his files. In response Fairbanks related that he had investigated a Margaret Rodriguez who had once owned a beauty parlor. No attempt was made by Arwine to see or copy the records of Fairbanks' earlier investigation.

This was most unfortunate because the Margaret Rodriguez to whom Fairbanks referred was a totally unrelated individual who, at the time, was facing state criminal charges for gambling.

After this "corroboration", by Fairbanks, Arwine was satisfied he had correctly identified the unknown female telephone conversationalist. He reported his written findings to Special Agent Kinne on December 15, 1971. Kinne presented the evidence to a grand jury, which indicted the appellant and 56 others. Arrest warrants were issued the same day, February 1, 1972, but they were not served until March 3.

Two days later, February 3, Agent Kinne interviewed Gene Bennett, whom Kinne believed to be the "Gene" discussed in the Vega-"Margo" telephone conversation. Bennett confirmed that he was the subject of the conversation, but he denied knowing any bookmaker named Margo.

In the meantime, plans were laid for simultaneous execution of the arrest warrants on March 3, 1972. The volume of the arrests necessitated extra manpower, and among the agents ordered to report to Tampa to help with the arrests were special agents Donald E. Ritchey and Geral W. Sosbee. Neither had participated in the investigation; neither knew whom they would be arresting until they arrived in Tampa March 3. They were directed to arrest the appellant, which they did at 9:16 a. m. in appellant's home-beauty parlor, in the presence of her family and one of her customers.

Appellant was taken to the FBI office in Tampa, where she was questioned, photographed, and fingerprinted. At 10:25 a. m. she was turned over to a United States Marshall for processing and incarceration. Once again, she was questioned, photographed, and fingerprinted. Afterwards, she was presented to a United States Magistrate and was released on a surety bond at 2:00 p. m. Appellant remained under the surety bond throughout the time she was under indictment—from February 1, 1972 to May 31, 1973. Twice during that time appellant appeared in court, for arraignment on May 11, 1972, and for an Omnibus hearing on October 2, 1972.

All of this, of course, was an inexcusable, indefensible turn of events.

On March 13, 1973, more than a year after appellant's arrest, Agent Kinne allowed her attorney to listen to the tape of the Vega-"Margo" telephone conversation. The attorney told Kinne that the voice on the tape was not that of the appellant. Consequently, Kinne reinterviewed Gene Bennett two days later. Bennett confirmed again that the conversation was about him, but said he knew no bookmaker named "Margo". The only "Margo" he knew, said Bennett, had worked in a convenience store on Armenia Avenue in Tampa. Subsequent checking by Kinne revealed that this "Margo" was Margaret Waltz, 2503 W. Custer, Tampa. Ms. Waltz' phone number was 935–0024; *the number recorded by the pen register had been 935–9024.*

On March 22, 1973, Kinne interviewed Ms. Waltz. After listening to the taped conversation, Ms. Waltz admitted she was the "Margo" whose conversation was on the tape, but she denied any illegal activity.

On March 27, 1973, the Assistant United States Attorney in Tampa requested dismissal of the indictment against the appellant. Actual dismissal followed on May 31, 1973.

On October 24, 1973, appellant initiated this suit by filing a complaint charging Agents Ritchey, Sosbee, and unknown agents with violating her Fourth Amendment rights. Ritchey and Sosbee responded with a motion for dismissal, claiming the complaint failed to state a claim on which relief could be granted and that they had official immunity. Alternatively, they asked for a summary judgment. The District Court denied the dismissal, saying federal police officers were not absolutely immune, but deferred ruling on the summary judgment.

Subsequently, the unknown agents referred to in the complaint were identified as Special Agent John J. Batley, who had monitored the wiretap on Vega's phone;

Special Agent Joseph A. Arwine, who had mistakenly identified "Margo"; Special Agent James S. Kinne, who had presented Arwine's findings to the grand jury; and former Special Agent in Charge Joseph F. Santoiana, Jr., who had been the immediate supervisor to the other agents. These individuals were joined as party defendants, and they renewed the pre-trial motions of Ritchey and Sosbee, asserting (1) that the complaint failed to state a claim upon which relief could be granted, (2) that they acted in good faith with a reasonable belief that their actions were valid, and (3) also asked for dismissal of the cause or for summary judgment.

After two extensions of time, all defendants filed their single answer on October 17, 1974. Three defenses were laid out. First, they renewed their charge that the complaint failed to state a claim upon which relief could be granted. Next, they asserted that the claim against Agent Santoiana was barred by the doctrine of official immunity. Finally, the remaining agents asserted the defense of good faith and reasonable belief in the validity of their actions.

Affidavits from all the parties were filed relative to the summary judgment question. In the meantime appellant began discovery. Interrogatories were sent to Agents Santoiana and Arwine, a deposition was taken from the Security Director of the General Telephone Company of Tampa, and a request was made for production of documents and things. However, summary judgment was entered before discovery was completed. The Santoiana interrogatories, aimed at disclosing agency guidelines for identifying unknown parties to telephone conversations, were never answered. Neither was the request for production.

Although the Santoiana interrogatories were never answered, those addressed to Agent Arwine were. Arwine's answers established that the handwritten log prepared by Agent Batley showed that Batley originally was unsure whether the female who spoke to Vega was called "Margo" or "Barbara". Agent Arwine said he did not recall listening to the tape of the conversation; instead he relied on the typed transcript. Moreover, he flatly denied ever dialing telephone number 935–9024.

In addition to the Arwine interrogatories, appellant also procured the deposition of James E. McMahon, Security Director for General Telephone Company of Tampa, Florida. McMahon reported that requests by law enforcement officers for telephone subscriber information would be handled as follows:

A. *Non-Published (NP) Telephone Numbers*

(1) A subpoena, summons, court order, or administrative order from a legislative body would normally be required to obtain non-published numbers or to obtain subscribers' names and addresses to NP numbers.

(2) All subpoenas, et cetera, would be indexed, filed and made a part of the permanent records in the Security Department.

(3) All public coin telephones (pay stations) are issued NP numbers for the primary purpose of eliminating the listing of the pay station from the telephone directory. If a verbal inquiry was received for information on a public pay station, it would be furnished without a subpoena, et cetera and no permanent record of the request would be retained.

(4) In emergency situations, involving life or death, or involving major crimes, non-published information may have been furnished to a law enforcement official in 1971 upon receipt of verbal request without a subpoena, et cetera. No permanent record of the request would have been retained.

A hearing relative to the summary judgment issue was held on October 22, 1974. On November 4, 1974, the District Court denied the agents' motion to dismiss but granted summary judgment in their behalf. The District Court held that more than mere negligence was necessary for appellant to recover, that there was no genuine issue as to the agents' subjective good faith, but noted that appellant's strongest case was that against Agent Arwine. Because

the phone company gave Arwine the wrong name to go with 935–9024 and in light of the Fairbanks' "corroboration" the Court held that Arwine was reasonable in his good faith. Accordingly, the Court found there were no genuine issues of material fact—the facts indisputably made out a reasonable, good faith defense—and summary judgment was granted.

On April 6, 1976, this case was orally argued before this Court. On May 8, 1976, we granted appellees' motion to supplement the record on appeal to include the following paragraph.

The request for authorization to dismiss the indictment against plaintiff contains a statement that an Agent of this Bureau called 935–9024 on January 20, 1972, on a pretext *for purposes of voice identification* and spoke to a woman who stated she operated a beauty parlor and resided at 3420 Grace Street. Inquiry with our Tampa Office as to who made this call to the above number, which is the coin box telephone at Biff Burgers mentioned previously, discloses that Special Agent Arwine made the call. He states that he made the call but now realizes that it was not to 935–9024. He states that, without having the file in front of him, he must have looked up the telephone number of Margo's Beauty Salon at 3420 Grace Street, 876–5646, and made the call without realizing it was a different number from that provided to him by the pen register. [Emphasis added].

## II. *The Law and the Decision*

### A. *General Principles*

■ Violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against him for damages consequent upon his unconstitutional conduct, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Since 1971, certain legal rules have developed around a *Bivens* cause of action. *See Bivens v. Six Unknown Named Agents of Federal Bu-*

*reau of Narcotics*, 2 Cir., 1972, 456 F.2d 1339. But, for the most part, courts have applied § 1983 law to *Bivens* cases. *See, e. g., Brubaker v. King*, 7 Cir., 1974, 505 F.2d 534.

In the instant case we look to *Bivens*-1983 case law for answers to the following questions: (1) In a *Bivens* situation, are investigative officers, not participating in the actual arrest, as amenable to suit as the arresting officers? (2) Assuming *investigative* officers to be potentially liable, are their defenses the same as those available to the arresting officers? (3) Can mere negligence render an officer liable, or is a malevolent intent required?

While the Fifth Circuit has not directly addressed the question of whether investigative officers, not participating in the actual arrest, are encompassed by the *Bivens*-1983 case law, at least one other circuit has assumed jurisdiction in this situation. In *Brubaker v. King*, 7 Cir., 1974, 505 F.2d 534, the plaintiff brought a 1983-Fourth Amendment suit against arresting officers, postal inspector, and an investigator from the Bureau of Customs. The Seventh Circuit, relying on *Bivens*, assumed subject-matter jurisdiction over plaintiff's claim against the postal inspector and federal investigator, who did not perform the arrest, and held that summary judgment was properly granted because there was no genuine issue of material fact as to defendants' good faith belief that probable cause existed. Likewise, in *Tritsis v. Backer*, 7 Cir., 1974, 501 F.2d 1021, the Seventh Circuit assumed jurisdiction in plaintiff's action against employees of the Internal Revenue Service in the Bureau of Alcohol, Tobacco and Firearms for wrongful arrest. Some of the agents had performed merely investigative functions, such as making phone calls, which ultimately led to the issuance of a warrant for the arrest of the plaintiff, who was misidentified due to a mix-up in names.

The Fifth Circuit, however, did find federal question jurisdiction under 28 U.S.C. § 1331 in a Fifth Amendment suit against federal officials and agents, in which plaintiff alleged that defendants had deprived

him of due process of the law in their investigation leading to his prosecution and in the prosecution itself. *Weir v. Muller*, 5 Cir., 1976, 527 F.2d 872. Without discussing the merits of the case, the Fifth Circuit held that the district court erred in dismissing the complaint for lack of jurisdiction. *Id.* at 873. Also, in *Perry v. Jones*, 5 Cir., 1975, 506 F.2d 778, a 1983-false arrest suit, the Fifth Circuit implicitly assumed jurisdiction over plaintiff's claim against an investigating state officer and others, by upholding the granting of a directed verdict for defendants based on the merits of the plaintiff's claim. The investigating officer had merely obtained and reduced to writing the statements of witnesses identifying the plaintiff, which led to his wrongful arrest, but the officer did not file the complaint nor make the arrest.

■ Furthermore, general principles of tort law provide a cause of action for unlawful arrest against a defendant who "affirmatively instigated, encouraged, incited, or caused the unlawful arrest". *Palmentere v. Campbell,* 8 Cir., 1965, 344 F.2d 234, 238; *Chesapeake & Potomac Telephone Company v. Lewis,* 69 App.D.C. 191, 99 F.2d 424, 425 (1938); *Burlington Transp. Company v. Josephson,* 8 Cir., 1946, 153 F.2d 372, 375; see Prosser, *The Law of Torts* § 11 at 47 (1971).

■ Thus, based on the broad language of the *Bivens* holding, the decisions of the Seventh Circuit, the Fifth Circuit's holdings in analogous cases, and principles of general tort law, we hold that this Court has subject-matter jurisdiction over investigative agents Batley, Arwine, and Kinne, who are amenable to a *Bivens*-Fourth Amendment suit. It is important, in considering the question of jurisdiction, to distinguish between a decision on the merits and one on jurisdictional grounds. In *Bell v. Hood*, 327 U.S. 678, at 682, 66 S.Ct. 773, at 776, 90 L.Ed. 939 (1945), the Supreme Court said:

. . . [I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. *Swafford v. Templeton*, 185 U.S. 487, 493, 494, 22 S.Ct. 783, 785, 786, 46 L.Ed. 1005; *Binderup v. Pathe Exchange*, 263 U.S. 291, 305–308, 44 S.Ct. 96, 98–99, 68 L.Ed. 308.

Having decided that investigative officers may be appropriate defendants in a *Bivens*-Fourth Amendment suit, we are faced with the question of what defenses are available to them.

In *Pierson v. Ray*, 386 U.S. 547, at 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that officers who effect an arrest may avail themselves of the defense of good faith and probable cause in a subsequent § 1983 action for false arrest. In the *Bivens* remand, the Second Circuit held the defense to be available to officers unable to prove the evanescent concept of probable cause, if they can prove they acted in good faith with a reasonable belief in the validity of the arrest. *Bivens*, 2 Cir., 1972, 456 F.2d 1339, 1347. In this Circuit the defense of reasonable good faith in false imprisonment cases has been characterized as a qualified immunity rather than a defense, *Bryan v. Jones*, 5 Cir. 1976, 530 F.2d 1210 (en banc). Nevertheless, by whatever name, the result is the same: An officer with probable cause to arrest, or who acts in reasonable good faith, is not liable.

■ An officer or an officer-investigator is not liable for every error he commits. Even if misinformed as to the facts, an arresting officer who acts with probable cause or in reasonable good faith as to the validity of his actions is not liable in action for false arrest or for the consequences ensuing from such an arrest. We can conceive of no sound reason dictating a differ-

ent rule for officer-investigators. They should be entitled to a defense generally equivalent to the reasonable good faith defense available to an arresting officer. For a discussion of what amounts to good faith, see *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). We think the following quotation from *Wood* is particularly apt here, although expressed in the specific context of school discipline:

> [A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

In the application of these rules, both objective and subjective good faith must be considered, 95 S.Ct. at 1000.

The District Court held that the degree of culpability necessary for investigators to incur *Bivens* liability was not present here but did not define the requisite degree of culpability; it only said that simple negligence was not enough.

■ A summary judgment is reviewable only to determine whether any actual dispute exists as to material facts. *Dunnington v. First Atlantic National Bank*, 5 Cir., 1952, 195 F.2d 1017. If any dispute exists, then summary disposition is improper. "[S]ummary judgment should be granted only when it is quite clear what the truth is. . . . Thus if reasonable minds could reach different conclusions and inferences from the evidence, the court must submit the case to the jury." *Croley v. Matson*

*Navigation Co.*, 5 Cir. 1970, 434 F.2d 73, 76. Consequently, the primary issue is whether our facts permit any genuine dispute as to whether the appellees, or any of them, acted in reasonable good faith.

### B.　*Agents Ritchey and Sosbee*

■ These appellees played no part in the gambling investigation that led to appellant's arrest; their only role was to make the arrest. The law is plain that an officer who arrests someone pursuant to a valid warrant has no liability for false arrest even though the suspect is later proved innocent. *Perry v. Jones*, 5 Cir., 1975, 506 F.2d 778; *Fleming v. McEnany*, 2 Cir., 1974, 491 F.2d 1353. The warrant for appellant's arrest resulted from a grand jury indictment and was signed by a deputy clerk of the United States District Court. Therefore, Agents Ritchey and Sosbee had a duty to arrest appellant. "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest . . . and being mulcted in damages if he does." *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

Furthermore, there is no indication that Ritchey and Sosbee exceeded the scope of the arrest authorization. Appellant alleges no abuse by them, and the facts permit no inference that any abuse occurred. Consequently, as to Agents Ritchey and Sosbee the summary judgment must be affirmed.

### C.　*Agent Batley*

■ Agent Batley's investigative role was limited to monitoring the wiretap on Frank Vega's telephone. Affidavits disclosed that he overheard the "Margo" conversation, logged the time of the call, and noted the names of the principals in the conversation. Batley's handwritten log was later given to Agent Arwine to aid in identifying "Margo". Even if somehow responsible for the malfunction of the pen register, Batley did not cause or instigate appellant's arrest. Furthermore, appellant offers no facts to dispute Batley's reasonable good faith. Accordingly, the summary

judgment is also affirmed as to appellee Batley.

### D. *Agent Kinne*

With the possible exception of Agent Arwine, Agent Kinne's role in the investigation was more extensive than that of the other appellees. Kinne presented to the grand jury the evidence which resulted in appellant's indictment. *Two days later,* Kinne interviewed Gene Bennett, the "Gene" discussed by Vega and "Margo" in their telephone conversation, and asked him who "Margo" was. Consequently, appellant contends that Kinne was uncertain about Arwine's identification of "Margo", and, in presenting evidence to the grand jury despite this uncertainty, Kinne may not have acted in reasonable good faith. In appellant's estimation this shows summary judgment inappropriate as to Kinne.

Agent Kinne's belated interrogation of Bennett is subject to numerous innocent interpretations. Appellees' brief submits the most likely explanation: Kinne could not interrogate Bennett before the wiretap terminated without blowing the operation; and later, when interrogation was permissible, a question about "Margo's" identity was obligatory. We do not believe appellant has alleged any facts creating a material dispute as to Kinne's reasonable good faith in presenting evidence to the grand jury. Consequently, we affirm the summary judgment as to appellee Kinne.

### E. *Agent in Charge Santoiana*

We find no evidence that this appellee, by any error in his supervision, caused appellant's unfortunate arrest. Consequently, we affirm the summary judgment as to him also. *E. g., Williams v. Vincent,* 2 Cir. 1974, 508 F.2d 541, 546; *Jennings v. Davis,* 8 Cir. 1973, 476 F.2d 1271; *Roberts v. Williams,* 5 Cir. 1972, 456 F.2d 819, 830–33, *cert. denied,* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110.

### F. *Agent Arwine*

Employing the teachings of *Wood v. Strickland, supra,* we note the total absence of any proof that Agent Arwine acted out of any malicious intention to injure Mrs. Rodriguez or to cause a deprivation of her constitutional rights.

The issue as to his liability is thus reduced to whether he "reasonably should have known" that what he did would violate, or proximately cause a violation of, the constitutional rights of the appellant. Moreover, he cannot be cast in damages unless he acted "with such disregard of [her] clearly established constitutional rights that his actions cannot reasonably be characterized as being in good faith", 95 S.Ct. at 1001.

His assignment, certainly one of responsibility, the moreso because he knew he was dealing with the inconclusive gleanings of a wiretap, was to identify "Margo", the unknown female. In his efforts, Arwine uncovered four items which might have tended to identify the appellant as the suspect— and he mishandled three of them.

He began with a telephone number, 935–9024, which was wrong, and with a name "Margo", which was essentially correct. He went to the telephone company to learn the subscriber to telephone number 935–9024 but, for the second time, he was put on the wrong road. As a matter of reasonable good faith, Arwine cannot be charged with these errors.

It is what he did afterwards, and failed to do, that brings into question the summary judgment in his favor.

Arwine checked with the Greater Tampa Credit Bureau. He there learned that for sixteen years appellant had operated a beauty salon, Margo's Beauty Parlor, in her home. This was the one item of accurate data Arwine compiled in the entire investigation, but he drew the wrong inference from this correct item. Because the name of the beauty salon corresponded to the name of the female party to the wiretapped conversation, Arwine, without further verification, jumped to the erroneous conclusion that he had identified the suspect.

An earlier check with the Tampa police and the sheriff of Hillsborough County disclosed that Margaret S. Rodriguez of 3420

Grace Street had never been arrested by local authorities. It may be that this should have put a reasonable man, especially a trained investigator, on notice that he might be on the trail of an innocent person. At least, it could have been enough to cause one possessed of reasonable care for the rights of innocent persons, to make reasonably certain that his deductions were not mere surmise but factually correct. Arwine did informally ask Tampa detective sergeant John Fairbanks whether he remembered encountering the name "Margaret Rodriguez" in his gambling investigation. Fairbanks replied that he did and that she worked as a beautician. Without asking Fairbanks to check his records, or to make them available for his inspection, Arwine accepted this as concrete corroboration. An examination of the records could quickly have revealed that the Margaret Rodriguez recollected by Fairbanks was a different woman, a woman then under indictment in state court.

On the record to this point, which was all that it had before it, the District Court held that Arwine's errors did not go beyond simple negligence.

Subsequent to oral argument in this case, appellee moved to supplement the record with a disclosure of the following information.

In January, 1972, prior to the arrest which occurred on March 3, 1972, Arwine placed a telephone call for the purpose of comparing the appellant's voice with the voice recorded in the tapped telephone conversation. When the party on the other end of the line said she was Margaret Rodriguez of 3420 Grace Street, Arwine thought he had conclusively identified his suspect. More than a year later, after the real Margo had been located, Arwine realized that he had not actually dialed 935–9024 (the tapped number as recorded by the pen register) but, instead, had looked up Margo's Beauty Salon in the telephone book and had dialed that number. Arwine, at the time he made that call, did not have the file before him and thus did not know the pen register number. He used the tele-phone directory, *even though he knew that the pen register number was unlisted.*

In response to pre-trial interrogatories Arwine could not recall listening to the recorded conversation. He also flatly denied ever calling 935–9024. In fact, he had not, but this evidence was misleading because he had dialed Margaret Rodriguez' correct telephone number and then failed to compare the voice he then heard with that of the telephone recording.

As already pointed out, this caused the return of an indictment which should never have been returned. It caused the arrest and jailing of a wholly innocent person. It caused that person the suspense, anxiety, and expense of a criminal prosecution which hung over her head for more than a year.

There are some facts in this case which cannot be disputed. Arwine did know that in the pursuit of a criminal investigation he was on the trail of a woman who for sixteen years had operated a beauty salon at the same location and had never been arrested for *any offense.* He used the telephone directory to "call" an unlisted telephone number. He did reach the appellant on the telephone, but made no effort to compare the voice he then heard with that on the telephone recording. Whether or not he was "ordered" to refrain from interviewing Mrs. Rodriguez, with no further consultation with his superiors he did not give her a chance to tell him that she was in total ignorance of the criminal activity which he was investigating. Instead, the conglomeration of errors committed by him was the vital link in the chain which caused her to be indicted and to suffer the treatment already described. There is no room for any reasonable doubt that he understood the purpose for which his "information" was collected and what it might cause.

This case is decided purely within the context of a summary judgment. On the state of the present record, we are unable to say that reasonable men could not differ as to whether Agent Arwine was entitled to a good faith defense. That is what we decide and all that we decide.

In light of the dissenting opinion we emphasize that we do not intend to hold, and we do not hold, "that a federal law enforcement officer who participates in a criminal investigation culminating in a federal grand jury indictment can be held answerable to one indicted and subsequently arrested . . . that all that the claimant must prove is that the indictment against him has been dismissed . . . .".

On the present record, no reasonable man could apprehend that the appellant might have been indicted, with all the attendant consequences, if the unfortunate series of errors had not been committed, which ultimately led to an invasion of the appellant's constitutional right not to be indicted, bailed, and required to live under the threat of a criminal trial because of utterly groundless charges. We attribute no significance to the fact that the indictment was dismissed. But for the fact that these errors were committed, the prosecution most assuredly would never have ensued it.

This case is not like *Perry v. Jones*, cited in the dissent, in which the victims of a robbery identified Perry as one of the participants. The officers could hardly have ignored that information, short of further inconsistent facts. Here, nobody identified Rodriguez as the one participating in the phone call, nor could anyone have done so, since it is undisputed that the call was to an entirely different person.

Furthermore, we have no desire to impinge upon the integrity of the grand jury process. There is no reason to believe that there are enough utterly groundless cases, apparently caused altogether by the acts of an investigating officer, to blow up a threatening cloud on the horizon.

We do not rule on the merits of whether or not Agent Arwine did in fact act in good faith. We simply hold that on this record the case against him should not have been dismissed on summary judgment, for reasonable minds could differ on the validity of this defense.

As to all appellees except Arwine, the summary judgment is affirmed.

As to Arwine, the summary judgment is reversed, and his case is remanded for further proceedings.

AFFIRMED IN PART.

IN PART, REVERSED and REMANDED.

TJOFLAT, Circuit Judge (concurring in part and dissenting in part):

Purporting to rely on the Supreme Court's decision in *Bivens v. Six Unknown Named Agents*,[1] the majority has today fashioned a federal common law cause of action against a federal officer who has neither violated the Constitution nor even committed a common law tort. They have held that a federal law enforcement officer who participates in a criminal investigation culminating in a federal grand jury indictment can be held answerable in money damages to one indicted and subsequently arrested. The officer is said to be subject to liability even though the indictment is lawfully returned and the capias, which brings about the arrest of the one who makes claim against him, is valid. All that the claimant must prove is that the indictment against him has been dismissed and that, but for the agent's negligent investigation, the indictment would probably not have been returned in the first place.

The relevant facts of this case are simple. It is not contested that the indictment against Margaret Rodriguez was lawfully returned by a duly convened federal grand jury and that she was arrested pursuant to a valid warrant. It subsequently appeared that the government had no case against her because a recorded telephone conversation which was thought to contain her voice and to implicate her in the gambling ring involved someone else. Without this evidence, the United States Attorney concluded that a case could not be made out against her; and, accordingly, his application to the district court for a dismissal of the charges against her was granted.

Numerous FBI agents were involved in the massive gambling investigation which lead to the indictment of fifty-seven persons under section 803 of the Organized

1. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Crime Control Act of 1970.[2] Agent Arwine's role was minor. Insofar as the record discloses, his participation was restricted to identifying the voice of "Margo" on the recorded telephone conversation. The argument is made that he was careless in the techniques he employed in his investigation, that proper diligence would have disclosed that Margaret Rodriguez was not "Margo". It is urged that because of his inattentiveness to detail he relayed an erroneous conclusion to the case agent, James S. Kinne, who, in turn, incorporated it in his grand jury presentation. Thus, Ms. Rodriguez was included in the indictment.

The majority concludes that such conduct as Arwine's is sufficient to render one liable in a *Bivens*-type cause of action. In my opinion, the majority's rationale cannot be squared with *Bivens* at all. I suggest that under any reasonable construction given to the pleadings or the evidence in this case, a cause of action has not been stated under either *Bivens* or federal common law. Indeed, the claim against Agent Arwine is so clearly insubstantial and frivolous that it should be dismissed for lack of subject matter jurisdiction.[3]

## II

28 U.S.C. § 1331(a) grants jurisdiction to the district courts when the action arises under the United States Constitution or federal laws. It has been established that an action brought under federal common law also finds its jurisdictional base in that section.[4] Since no violation of a federal statute has been alleged in this non-diversity action (nor could it have been successfully),[5] it is our task to examine whether the record before us could support any legitimate contention that Agent Arwine's conduct violated the Constitution or federal common law. In my opinion it cannot.

### A. Constitutional Tort

In *Bivens v. Six Unknown Named Agents*[6] it was alleged that agents of the Federal Bureau of Narcotics entered Bivens' apartment, arrested him, and then thoroughly searched his dwelling, all without a warrant or probable cause. The Supreme Court decreed that when an individual can demonstrate an injury resulting from the violation of his fourth amendment rights by federal officers, he may recover damages.[7] The damage action was premised on the *unconstitutional* conduct of the officers.[8]

*Bivens* is inapplicable for a very simple reason. In the instant case there has been no unconstitutional seizure. Ms. Rodriguez was properly arrested pursuant to a grand jury indictment and a valid capias. This is totally unlike the *Bivens* situation where

---

2. 18 U.S.C. § 1955 (1970).

3. See note 8 *infra.* It is, of course, incumbent upon the federal courts to dismiss an action when it appears that they have no jurisdiction. *Capron v. Van Noorden,* 6 U.S. (2 Cranch) 125, 2 L.Ed. 229 (1804); *Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244, 1248 n. 3 (5th Cir. 1976).

4. *Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). *See generally Nolan v. Meyer,* 520 F.2d 1276, 1278 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

5. *See District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) (section 1983 does not apply to actions of the federal government).

6. See note 1, *supra.*

7. 403 U.S. at 397, 91 S.Ct. 1999.

8. *Id.* at 389, 396–97, 91 S.Ct. 1999. The Court specifically distinguished cases where a constitutional violation was not alleged: "Nor are we asked in this case to impose liability upon a congressional employee for actions contrary to no constitutional prohibition, but merely said to be in excess of the authority delegated to him by the Congress. *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963)." 403 U.S. at 396–97, 91 S.Ct. at 2005.

The majority seeks comfort from *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1947). It affords none. In *Bell* the complaint alleged that damages were suffered as a result of unconstitutional searches and seizures by FBI agents. The district judge dismissed the suit for lack of subject matter jurisdiction because it did not "arise under the Constitution of laws of the United States" as required by 28 U.S.C. § 41(1), now codified at 28 U.S.C. § 1331(a) (1970). The Supreme Court in *Bell*

federal agents were alleged to have acted without probable cause or a warrant and with unreasonable force in making their arrest. Nothing of the sort is alleged here. Just because a person validly arrested is later discovered to be innocent does not make her arrest "unlawful" for Fourth Amendment purposes. To the contrary, an arrest carried out pursuant to a validly issued warrant is conclusively presumed to be proper.[9]

The majority opinion does not try to harmonize *Bivens* and this case. Instead, it relies upon the general tort law of false arrest to hold that Agent Arwine has "caused" the arrest of Ms. Rodriguez. Apparently, this is seen as synonymous with participating in a fourth amendment seizure. Leaving aside the fact that this arrest was not false, but lawful, general tort law still fails the majority. The case law nowhere imposes liability on persons engaged merely in investigatory work.[10] Indeed, it is the general rule that one who only gives information is not liable for a false arrest, even if the information is given maliciously and without probable cause.[11]

declined to determine whether such allegations stated a cause of action, a question answered in the affirmative by *Bivens* some twenty-five years later. It made clear, however, that when a complaint "is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court . . . must entertain the suit." 327 U.S. at 681–82, 66 S.Ct. at 776. Dismissal for failure to state a claim for relief is a dismissal on the merits, not for want of jurisdiction. *Id.* at 682, 66 S.Ct. 773.

The majority in *Bell* noted two exceptions to this rule. It noted that "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous" a dismissal for want of jurisdiction is in order. *Id.* at 682–83, 66 S.Ct. at 776. The case before us clearly falls within these exceptions. Ms. Rodriguez freely admits that the only search or seizure which she challenges, her arrest, was made pursuant to a valid arrest warrant. Furthermore, Agent Arwine was not even present at the arrest. No legitimate constitutional violation has been alleged nor can one be inferred from the record. Without the presence of such an allegation there obviously can be no claim which arises under the Constitution as is required by section 1331. Ms. Rodriguez's claims are "wholly insubstantial and frivolous" and hence fail to provide jurisdiction. (See note 9 *infra* and accompanying text for further discussion.)

The majority also places reliance on *Weir v. Muller*, 527 F.2d 872 (5th Cir. 1976). It is misplaced. In *Weir* the plaintiff validly alleged in his complaint that federal officials in the course of a tax evasion investigation and subsequent prosecution had violated his Fifth Amendment right to due process of law. The district court erroneously dismissed the claim for lack of subject matter jurisdiction and the panel reversed on the authority of *Bell*. The panel did not, of course, express any opinion as to the merits of his claims. *But cf. Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The complaint of Ms. Rodriguez, on the other hand, alleges only an "unlawful arrest" without probable cause. The uncontroverted facts, however, do not support the legal conclusion of Ms. Rodriguez that her arrest was "unlawful." See note 9 *infra* and accompanying text. Consequently, no constitutional deprivation has been successfully alleged as it was in *Weir*.

9. *United States v. Cravero*, 536 F.2d 637, 647–48 (5th Cir. 1976): "The arrest warrants represent judicial sanction of the deprivations of the suspects' liberties. Possession of the warrants was a completely self-validating justification for the arrests . . . .."

10. As the majority concedes, *Perry v. Jones*, 506 F.2d 778 (5th Cir. 1975); *Brubaker v. King*, 505 F.2d 534 (7th Cir. 1974) and *Tritsis v. Backer*, 501 F.2d 1021 (7th Cir. 1974), all section 1983 civil rights cases, never discuss this point. Although it is true that Agent Backer was involved only in investigation, the court dismissed the case as to him solely on account of his good faith defense. In *Strutt v. Upham*, 440 F.2d 1236 (9th Cir. 1971), the policeman, although he acted as investigator, was also the one who filed the complaint and was thus the instigator of the arrest.

11. *Carr v. National Discount Corp.*, 172 F.2d 899, 902 (6th Cir.), *cert. denied*, 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495 (1949); *see also Charles Stores Co. v. O'Quinn*, 178 F.2d 372, 374 (4th Cir. 1949); *Stueber v. Admiral Corp.*, 171 F.2d 777 (7th Cir.), *cert. denied*, 336 U.S. 961, 69 S.Ct. 891, 93 L.Ed. 1113 (1949); *Chesapeake & Potomac Tel. Co. v. Lewis*, 69 U.S. App.D.C. 191, 99 F.2d 424 (1938).

*Palmentere v. Campbell*, 344 F.2d 234 (8th Cir. 1965), and *Burlington Transp. Co. v. Josephson*, 153 F.2d 372 (8th Cir. 1946), cited by

A prior decision of this court, *Perry v. Jones*,[12] is instructive on this point. In that case a state police officer involved in an investigation recorded statements of witnesses who identified Perry as an armed robber. When such information later turned out to be false, Perry, who had been incarcerated under an arrest warrant relying on the witnesses' statements for probable cause, sued several officials for false arrest. Judge Coleman, for a unanimous panel, dismissed the complaint against the investigating officer. The court pointed out that he had performed in the line of duty and that he had not filed the complaint personally. This had been done by

the majority, are not to the contrary. Those cases held that if the defendant did not participate in the false arrest, the plaintiff must show that he affirmatively instigated, directed, or encouraged the wrongful action. This rule clearly contemplates activity more closely tied to the actual arrest than that of Arwine, as the facts of those cases demonstrate. In *Palmentere* the court dismissed false arrest and imprisonment actions against grand jurors who had no responsibility for actually arresting persons. In *Josephson*, even though the defendant had initiated the arrest with his complaint, he was not guilty of false arrest because the police had failed to procure a warrant. *See also Manaro v. Rosenberg*, 231 F.2d 305 (7th Cir.), *cert. denied*, 351 U.S. 970, 76 S.Ct. 1039, 100 L.Ed. 1489 (1956), where an instigating party had no liability since he had no control of the actions of the arresting officers.

**12.** 506 F.2d 778 (5th Cir. 1975).

**13.** *Id.* at 780.

**14.** By using the term "general tort law," I do not advocate its appropriateness in a case of this kind—a non-diversity action where the issue is what constitutes a fourth amendment seizure. I simply meet the majority on its own grounds.

**15.** Although from the record one might be tempted to conclude that the evidence obtained by Agent Arwine was the only evidence linking Ms. Rodriguez to the gambling operation, this is nowhere stated to be the case. (It cannot be legitimately inferred that just because the government dismissed its case because one piece of evidence was proven to be false that that piece of evidence was its only one.) Indeed, section 1955 does not reach simple bettors. The statute only reaches a person who "conducts, finances, manages, supervises, directs, or owns" an illegal gambling business.

another officer with the clearance of the District Attorney's Office.[13]

The facts here demonstrate that Agent Arwine, even under general tort law,[14] neither actually nor constructively participated in the arrest of Ms. Rodriguez. Moreover, the majority seems to work under the perhaps erroneous conclusion that it was solely Agent Arwine's evidence that was presented to the grand jury concerning Ms. Rodriguez.[15] If other evidence were presented, it could very possibly have been an intervening or superseding cause, relieving him of tort liability.

Since Agent Arwine has committed no constitutional violation, a *Bivens*-type action is unavailable against him.[16] What

18 U.S.C. § 1955(a) (1970). A simple phone call from a person known to be so involved would not normally suffice to draw the receiver of the call under the section's· ambit.

**16.** Even if it is assumed *arguendo* that a constitutional tort has been perpetrated, it is still apparent that Agent Arwine has not forfeited his immunity in this case. It is not at all clear to me what the majority sees as the relationship between immunity and negligence in this situation. If they are holding that mere negligence waives an officer's immunity, I must disagree. *See Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc). The case law, including *Bivens v. Six Unknown Named Agents*, 456 F.2d 1339 (2d Cir. 1972), and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), rejects a simple negligence test. To lose his immunity, an officer must have acted at least intentionally, if not maliciously. This, of course, can be proved by the acts themselves if they are so flagrant that intent can be readily inferred. *See Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir. 1970) (gross and culpable negligence supplies intent). But no such intent can be demonstrated from the facts of this case. My Brothers freely admit that Agent Arwine did not act maliciously. This proves that Ms. Rodriguez was simply the unfortunate victim of a series of coincidences, none of which can be blamed on him.

But still the majority finds fault. They suggest Agent Arwine should have had the detective check his records further, despite his identification of Margaret Rodriguez as a beautician. They claim Agent Arwine should have been put on notice due to the fact that she had never been arrested by local authorities, although why someone involved in a gambling operation should invariably have a previous criminal record they do not say. And they find it odd that Agent Arwine phoned the listed

Ms. Rodriguez's complaint boils down to, then, is that she demands recovery from an investigator who could reasonably foresee that she might be validly indicted if he performed his work negligently. Since there is no federal statute granting such relief, and no constitutional tort can be implied, we must examine whether she has stated a claim under federal common law.

## B. Federal Common Law

In *Wheeldin v. Wheeler*,[17] an investigator for the House Un-American Activities Committee was alleged to have filled in, without authority and with malicious intent, a subpoena requiring the petitioner to appear before the Committee. This caused him great disgrace and the loss of his job. Nevertheless, the Supreme Court denied relief. After searching for a fourth amendment violation but seizing upon none, it turned to the question of whether a cause of action arose under section 1331 via federal common law. The majority refused to fashion a federal tort of abuse of process, elucidating that "it is perhaps needless to state that we are not in the free-wheeling days antedating *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The instances where we have created federal common law are few and restricted." [18] The case at hand is controlled by *Wheeldin*. There a flagrant abuse of federal process did not dictate the creation of a federal common law remedy. Here the essentials of a common law action for malicious prosecution or abuse of process have not even been alleged.[19] As a result, the conclusion seems inescapable that no cause of action has been stated under federal common law.[20]

## III

A few additional observations should be made about the consequences that may well flow from the rationale the majority has adopted today. It should be anticipated that on remand Agent Arwine, taking his cue from the majority opinion, may seek to discover the entire grand jury proceedings that led to the fifty-seven defendant indictment, to explore the FBI files in the case, and to interrogate the prosecutor, all in an

---

number of the beauty parlor, even though unlisted phones are commonly used in illegal gambling activities, and his call would undoubtedly have provided a tip-off had he phoned a number over which unlawful activity was carried on.

I cannot subscribe to this exercise in nitpicking. Agent Arwine made his identification and verified it in a totally reasonable manner. The facts which the majority isolates, when viewed in the totality of the circumstances, would not lead reasonable men to differ over whether Agent Arwine had acted with reasonable good faith toward Ms. Rodriguez. *See Brubaker v. King, supra; Tritsis v. Backer, supra.*

**17.** 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

**18.** 373 U.S. at 651, 83 S.Ct. at 1445. Examples where the invitation to create federal common law has been refused include *Nolan v. Meyer, supra,* and *Blaney v. Florida Nat'l Bank,* 357 F.2d 27 (5th Cir. 1966).

**19.** The majority admits that Agent Arwine has shown no malice. Relevant to this point is the First Circuit case of *Madison v. Manter,* 441 F.2d 537 (1st Cir. 1971). In *Madison* a state police officer was sued under section 1983 for negligence in seeking a search warrant on insufficient evidence. The court found that, as a matter of general law, police officers charged with improper prosecution must be shown to have been malicious. Pointing out that innocent individuals are protected by the review of a neutral magistrate, the court declined "to place upon policemen acting in good faith the risk of personal liability if that official makes a negligent mistake." *Id.* at 539.

**20.** The most similar previous case found was *Sopp v. Gehrlein,* 232 F.Supp. 881 (facts), 236 F.Supp. 823 (W.D.Pa.1964). There federal agents assisted in the investigation of a sodomy case. Due to unusual circumstances, an innocent person was indicted for the crime. After charges were dropped against her, she sued all involved in the investigation including the federal agents. The court simply cited *Wheeldin* and stated, "That case is authority for the conclusion that on the face of the complaint no federal cause of action can be made out against [the federal agents]." *Id.* at 825.

effort to demonstrate that his conduct was not the proximate cause of the indictment and subsequent arrest of Ms. Rodriguez. To the extent that the district court seeks to preserve the secrecy grand jury proceedings demand under the law it may well impede Arwine's right to present a defense and, perhaps, preclude him that right altogether. The majority opinion, therefore, puts in direct conflict the legitimate discovery needs of Agent Arwine and the strong public policy of keeping grand jury proceedings private.

But the threat presented to the integrity of the grand jury process by today's holding goes beyond the immediate case. Any time an indictment is dismissed, the investigating officers will be open to the claim that the indictment was the product of negligent investigation. Once a sufficient allegation is made, should it not be anticipated that discovery will involve the grand jury proceedings in every case? In addition, there are undoubtedly those who will present a claim simply to find out what business the grand jury is about. The devastating potential of this decision in the field of law enforcement is obvious and requires no further discussion.

In sum, I would remand the claim against Agent Arwine with instructions to dismiss for want of subject matter jurisdiction. As for the other agents, I concur in the result reached by the majority; the judgment of the district court as to them should be affirmed.